IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETHZAIDA REYNOSA MORALES[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security | : : | NO.  20-5258 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                    July 25, 2022

Bethzaida Reynosa Morales ("Plaintiff") seeks review of the Commissioner's

decision denying her application for supplemental security income ("SSI").  For the

reasons that follow, I find that the decision of the Administrative Law Judge ("ALJ") is

not supported by substantial evidence.

I.    **PROCEDURAL HISTORY**

Plaintiff protectively filed for SSI on October 4, 2018, alleging disability due to

osteoarthritis, high cholesterol, and diabetes.  Tr. at 69, 170, 196.[3]  Plaintiff's application

---

[1]The complaint identified Plaintiff as Bethzaida Reynosa, which is how the docket is captioned.  Doc. 1.  However, the briefs as well as the Social Security filings (e.g., tr. at 1, 19) identify Plaintiff as Bethzaida Reynosa Morales, and the docket should be amended to reflect Plaintiff's full name.  Her counsel refers to her as Ms. Reynosa.  Doc. 24 at 1.

[2]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[3]Plaintiff alleged disability as of May 1, 2018, tr. at 170, but the earliest month for which SSI benefits can be paid "is the month following the month you filed the

was denied initially, id. at 58-68, and Plaintiff requested a hearing before an ALJ, id. at

81, which took place on October 23, 2019.  Id. at 36-57.  On November 22, 2019, the

ALJ issued the decision under review, concluding that Plaintiff was not disabled.  Id. at

19-29.  The Appeals Council denied Plaintiff's request for review on August 31, 2020, id.

at 1-6, making the ALJ's November 22, 2019 decision the final decision of the

Commissioner for purposes of the present action.  20 C.F.R. § 416.1481.

Plaintiff commenced this action in federal court on October 21, 2020, Doc. 1,[4] and

the matter is now fully briefed and ripe for review.  Docs. 24-25, 28.[5]

## II.   <u>LEGAL STANDARDS</u>

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

---

application."  20 C.F.R. § 416.335.  Plaintiff also filed an application for disability
insurance benefits ("DIB"), tr. at 166, but it was denied because Plaintiff had not worked
long enough to accrue sufficient quarters of coverage to be insured under that program.
Tr. at 70-73.  Plaintiff did not challenge that determination, id. at 81-84, and it is
therefore not relevant for purposes of this appeal.

[4]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal
Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 7.

[5]Plaintiff filed an initial motion for summary judgment and request for review on
November 9, 2021, which consisted of one page with no claims or brief, see Doc. 19, to
which Defendant filed a response.  Doc. 20.  Plaintiff's counsel subsequently contacted
my office to explain that Plaintiff's initial motion was filed in error, after which I issued
an Order granting Plaintiff's unopposed request to be permitted to file a brief.  See Doc.
23.  Plaintiff thereafter filed a new motion for summary judgment and request for review,
along with a brief (Doc. 24), to which Defendant filed a response (Doc. 25) and Plaintiff
filed a reply (Doc. 28).  The later briefing rendered Plaintiff's initial motion moot.

months." 42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

>    1.      Whether the claimant is currently engaged in substantial gainful activity;
>
>    2.      If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;
>
>    3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
>    4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
>    5.      If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R.

§ 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the

burden shifts to the Commissioner at the fifth step to establish that the claimant is capable

of performing other jobs in the local and national economies, in light of her age,

education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88,

92 (3d Cir. 2007).

     The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether substantial evidence supports the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

## III.   DISCUSSION

### A.   ALJ's Findings and Plaintiff's Claims

The ALJ found that Plaintiff suffers from the severe impairments of degenerative disc disease ("DDD") of the lumbar spine and obesity, and has medically determinable but non-severe diabetes, tendonitis of the left knee, mild scoliosis, and high cholesterol. Tr. at 21.[6] The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met the Listings, id. at 22, and that she retained the RFC to perform light work with the following limitations: sit for six hours, alternate to standing for ten minutes during every hour of sitting; stand for three hours, alternate to sitting for ten minutes after every hour of standing; walk for two hours, alternate to sitting for ten minutes after every hour of walking; can push/pull as much as lift/carry; occasionally

---

[6]The ALJ specified that the DDD was "most prominent on the right at L5-S1 where a right paracentral disc protrusion displaces the descending right S1 nerve root." Tr. at 21.

climb ramps, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and occasionally work at unprotected heights and operate a motor vehicle.  Id. at 22-23.  Plaintiff had no past relevant work, id. at 27, but based on the testimony of the vocational expert ("VE"), the ALJ found that Plaintiff could perform jobs in the national economy including bench assembler, office helper, and locker room attendant.  Id. at 28. Thus, the ALJ found that Plaintiff was not disabled.  Id. at 29.

Plaintiff claims that (1) the ALJ's severity determination is flawed, causing the ALJ to minimize Plaintiff's pain and resulting in a flawed RFC assessment; (2) the ALJ erred in his treatment of the vocational evidence, including failing to account for Plaintiff's need for a cane and conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (3) the ALJ's decision is constitutionally defective because the appointment of the Commissioner of Social Security violates the separation of powers.  Doc. 24 at 5-21; Doc. 28 at 1-10.  Defendant responds that the ALJ's decision is supported by substantial evidence.  Doc. 25 at 16-26.  Although Defendant agrees that the statutory provision governing the appointment of the Commissioner violates the separation of powers to the extent it limits the President's authority to remove the Commissioner without cause, she argues that the constitutional defect does not provide a basis for remand.  Id. at 3-15.

**B.**     **Summary of the Record**

Plaintiff was born on January 21, 1967, and thus was 51 years old at the time of her application and 52 years old at the time of the November 22, 2019 ALJ decision under review.  Tr. at 38.  Plaintiff is five feet and nine inches tall and weighs between

approximately 199 and 211 pounds.  Id. at 196, 335.  Plaintiff has a two-year associates

degree in information systems but did not perform work in that field, id. at 38, 44, 197,

and has no past relevant work.  Id. at 27, 47.  She lives in an apartment with one of her

adult daughters, with whom she moved from Puerto Rico to Philadelphia in 2018.  Id. at

39, 41, 206.

Plaintiff reported that she was first diagnosed with radiculopathy in 2016 while

living in her native Puerto Rico.  Tr. at 311.  Records from Puerto Rico confirm that on

November 1, 2016, x-rays of Plaintiff's lumbar spine indicated mild lumbar

dextroscoliosis.  Id. at 275.[7]  Five days later, a CT scan of Plaintiff's lumbar spine

revealed mild DDD at L3-4 to L5-S1, with mild disc bulges resulting in mild spinal canal

and bilateral neural foraminal stenosis at the same levels.  Id. at 276.[8]

On May 16, 2018, after moving to Pennsylvania, Plaintiff first went to Public

Health Management Corporation (PHMC") Care Clinic for treatment of back pain.  Tr. at

305-08.[9]  She reported a history of back pain and sciatica diagnosed more than a year

earlier, and that a specialist in Puerto Rico had referred her for physical therapy but she

---

[7]Dextroscoliosis refers to an appreciable right-lateral deviation in the normally straight vertical line of the spine.  Dorland's Illustrated Medical Dictionary (32nd ed. 2012) ("DIMD"), at 505, 1681.

[8]Foraminal stenosis is the narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space.  DIMD at 1770.

[9]Records from PHMC for the period from May 16, 2018, through August 7, 2018, are duplicated in the administrative record.  Tr. at 295-308, 339-51.  Citations to these records will be to their earlier appearance only.

did not attend due to a hurricane.  Id. at 305.  Plaintiff also reported that her pain had

worsened over the previous several months with prolonged standing and sitting.  Id.

Roberta Lee Powell, M.D.,[10] conducted a physical examination with normal findings.  Id.

The doctor started Plaintiff on ibuprofen and cyclobenzaprine,[11] referred her to

Hahnemann University Hospital ("Hahnemann") for an orthopedic evaluation, and

ordered lab studies.  Id. at 306.  On May 30, 2018, following the lab studies, Dr. Powell

diagnosed Plaintiff with diabetes mellitus,[12] hyperlipidemia,[13] back pain, and obesity.  Id.

at 303.  The doctor started Plaintiff on metformin and atorvastatin.  Id.[14]

On June 5, 2018, Plaintiff had an initial consultation with Corey Ruth, M.D., at

Hahnemann for lower back and left knee pain.  Tr. at 362-63.  Dr. Ruth's orthopedic

examination of Plaintiff's lumbar spine revealed pain and tenderness to palpation over

spinous processes, posterior superior iliac spine, sacroiliac points, and paraspinal

---

[10]Elsewhere in the record, Dr. Powell is called Roberta Lee-Powell, D.O.  See, e.g., tr. at 281.

[11]Cyclobenzaprine is a muscle relaxant used to treat pain or injury.  See https://www.drugs.com/cyclobenzaprine (last visited Jul. 6, 2022).

[12]Diabetes mellitus (or type 2 diabetes) is an autoimmune disease of the pancreas characterized by peak age of onset between 50 and 60 years, gradual onset with few symptoms of metabolic disturbance, and no need for exogenous insulin.  DIMD at 506.

[13]Hyperlipidemia is elevated blood lipids, which are fats and fatlike substances in the blood.  DIMD at 891, 1061.

[14]Metformin is used together with diet to lower high blood sugar in patients with type 2 diabetes.  See https://www.drugs.com/metformin (last visited Jul. 6, 2022). Atorvastatin (marketed as Lipitor is used to treat high cholesterol.  See https://www.drugs.com/artovastatin (last visited Jul. 6, 2022).

musculature, and slight pain with range of motion, and Plaintiff rated her pain level as a five on a ten-point scale.  Id. at 363.  The passive straight leg raise ("SLR") and Lasegue's tests were positive.  Id.[15]  Plaintiff also exhibited tenderness and swelling of her left knee.  Id.  Dr. Ruth diagnosed Plaintiff with osteoarthritis of the lumbar spine with radiculopathy, and left knee tendinitis.  Id.  The doctor ordered nerve conduction studies and x-rays, and referred Plaintiff to physical therapy.  Id.

Also on June 5, 2018, x-rays of Plaintiff's lumbar spine showed moderate DDD, degenerative articular facet hypertrophy at L4-L5, degenerative articular facet hypertrophy and bony neural foraminal stenosis at L5-S1, and moderate aortoiliac atherosclerotic calcification.  Tr. at 277, 326.[16]

On June 12, 2018, Plaintiff underwent an initial physical therapy evaluation at Aquatic Therapy of Chinatown.  Tr. at 281-85.  Plaintiff described functional limitations due to lower back pain that radiated down her right lower extremity and was aggravated by sitting, standing, walking, and using stairs.  Id. at 281.  The therapist noted that

---

[15]The SLR test, which is done to determine whether a patient with low back pain has an underlying herniated disc, the patient has his or her leg lifted, and the test is positive if pain is produced between 30 and 70 degrees.  Johnson v. Colvin, Civ. No. 09-2228, 2014 WL 7408699, at *5 n.17 (M.D. Pa. Dec. 30, 2014) (citation omitted).  The Lasegue test is an SLR test in which, once a complaint of pain or tightness is reached, the leg is gradually lowered until radicular symptoms vanish.  See https://medscape.com/lasegue (last visited Jul. 8, 2022).

[16]"Facet [h]ypertrophy is the term used to describe a degeneration and enlargement of the facet joints.  The facet joints, which are a pair of small joints at each level along the back of the spine, are designed to provide support, stability, and flexibility to the spine."  See http://www.spine-health.com/glossary/hypertrophic-facet-disease (last visited Jul. 8, 2022).  Aortoiliac atherosclerotic calcification refers to hardening of plaque in the aorta and iliac arteries.  DIMD at 113, 172, 269.

Plaintiff experienced pain upon activities of daily living and had decreased muscle performance due to spinal degeneration and deconditioning, with pain in her lumbar spine and right leg, decreased range of motion and strength, and limited mobility due to radiating pain. Id. The therapist opined that Plaintiff was a good candidate for a course of skilled physical therapy. Id.

On June 13 and July 10, 2018, Plaintiff returned to Dr. Powell of PHMC for follow-up of her diabetes diagnosis. Tr. at 300-01, 298-99. Plaintiff reported doing well with her diabetes[17] and that she was undergoing physical therapy for her back pain, which was helping. Id. at 300, 298. However, on August 7, 2018, Plaintiff told Dr. Powell that she had discontinued therapy due to an inability to afford co-payments. Id. at 296.

On August 22, 2018, Plaintiff returned to Dr. Ruth of Hahnemann for follow-up. Tr. at 356-57. Plaintiff reported moderate pain in her lumbar spine with right radiculopathy, id. at 356, and pain on range of motion rated as six on a ten-point scale. Id. at 357. Upon examination, Dr. Ruth noted pain and tenderness to palpation over spinous processes, posterior superior spine, sacroiliac joints, and paraspinal musculature, and positive SLR and Lasegue's tests. Id. The doctor noted that an EMG was performed and reviewed but did not note the EMG findings.[18] Id. at 356. Plaintiff declined to be treated with an injection, and the doctor recommended an MRI scan, conservative care, and home exercises. Id. at 356, 357.

---

[17]Dr. Powell added Januvia, which is used for the treatment of diabetes, see https://www.drugs.com/januvia.html (last visited Jul. 6, 2022), to Plaintiff's regimen. Tr. at 298.

[18]This EMG appears to be missing from the medical record.

On September 17, 2018, Plaintiff underwent an MRI scan of her lumbar spine.  Tr. at 329-30, 364-65.  The MRI revealed lumbar degenerative changes from L2 through S1, most prominent on the right L5-S1 where a right paracentral disc extrusion displaced the descending right S1 nerve root.  Id. at 329, 365.

On September 26, 2018, Plaintiff retuned to Hahnemann with complaints of moderate pain and spasms in the lumbar spine with radiculopathy.  Tr. at 354-55. Physical examination of Plaintiff's lumbar spine demonstrated pain, spasms, and tenderness to palpation over spinous processes, posterior superior iliac spine, sacroiliac joints, and paraspinal musculature, with slight pain with range of motion and slight leg weakness at times.  Id. at 355.  Passive SLR and Lasegue's tests were again positive.  Id. Plaintiff declined a myofascial lumbar trigger point injection and Dr. Ruth instructed her to continue conservative care and home exercises.  Id. at 354.

On January 8, 2019, Plaintiff returned to PHMC and reported to Dr. Powell that she can walk ten minutes before she has to rest, and can only stand for short periods of time.  Tr. at 335.

On January 15, 2019, David Dzurinko, M.D., performed an internal medicine consultative examination.  Tr. at 311-15.  Plaintiff rated her back pain as between six and eight on a ten-point scale, intermittent, sharp and stabbing that shot down her legs, and reported doing at least five months of physical therapy without success.  Id. at 311. Plaintiff had no hospitalizations and did not use an ambulatory assistive device, was independent with self-care, and did some shopping and knitting but her daughter does the cooking, cleaning, and laundry.  Id. at 311, 312.  Upon examination, Plaintiff exhibited

antalgic gait, with weightbearing on the left to offload the right.  Plaintiff declined to squat due to pain, exhibited a normal stance, and could walk on heels and toes without difficulty.  Id. at 313.  She could rise from the chair without difficulty and needed no help changing or getting on and off the examination table.  Id.  SLR tests were negative bilaterally, both seated and supine, although Plaintiff had some back pain which did not appear to radiate to her lower extremity.  Id.  She had pain around the waist at the L2-L3 level and tenderness to palpation in her lumbar back and paraspinal tenderness.  Id. at 313-14.  Plaintiff exhibited sensory deficit to pinprick pain sensation from the right foot to the knee and from the fingers on the right upper extremity to the shoulder, with 5/5 strength in all extremities, 5/5 grip strength, and intact hand and finger dexterity.  Id. at 314.  Dr. Dzurinko noted that an x-ray of Plaintiff's lumbosacral spine showed no acute fracture or subluxation.  Id.  The doctor diagnosed Plaintiff with degenerative joint disease and osteoarthritis per report with right sciatica, radiculopathy per report and EMG study with chronic low back pain, and type 2 diabetes with no complications.  Id.

Dr. Dzurinko also completed a medical source statement of ability to do physical work-related activities.  Tr. at 316-23.  The doctor opined that Plaintiff could frequently lift/carry up to twenty pounds and never lift more than twenty pounds; sit for five hours continuously and for eight hours total in an eight-hour workday; stand for thirty -to- sixty minutes at one time and for three hours total; and walk for thirty minutes at one time and for two hours total.  Id. at 317.  Dr. Dzurinko opined that Plaintiff did not need a cane to ambulate and had no manipulative limitations, but that she should not operate foot controls more than occasionally.  Id. at 317, 318.  The doctor further opined that Plaintiff

should never climb ladders or scaffolds, kneel, or crawl, and could occasionally climb ramps and stairs, balance, stop, and crouch, id. at 319, and that she could frequently tolerate exposure to environmental conditions except for occasional exposure to unprotected heights, moving mechanical parts, and operation of a motor vehicle.  Id. at 320.  Dr. Dzurinko indicated that Plaintiff could travel alone, use public transportation, prepare a simple meal, care for her personal needs, and sort, handle and use paper/files, and could not perform activities like shopping, walking a block at a reasonable pace on rough or uneven surfaces, or climbing a few steps at a reasonable pace with the use of a single hand rail.  Id. at 321.

In February 2019, after reviewing the records at the initial determination stage, Kevin Hollick, D.O., opined that Plaintiff could frequently lift/carry ten pounds and occasionally twenty pounds, could sit and stand and/or walk for a total of six hours each in an eight-hour workday, and could push/pull to the same extent as lift/carry.  Tr. at 63-64.  Dr. Hollick further opined that Plaintiff was limited to occasional stooping, balancing, and climbing of ladders, ropes and scaffolds, and that she should avoid concentrated exposure to vibration.  Id. at 64.

On April 9, 2019, Plaintiff returned to PHMC for follow-up with Dr. Powell.  Tr. at 333-34.  Plaintiff's diagnoses, medications, and examination findings were unchanged from prior visits, although Plaintiff complained of ringing in her ears and reported that orthopedics had told her that she needed a cane.  Id. at 333.

On April 10, 2019, Plaintiff returned to Dr. Ruth at Hahnemann for follow-up of pain in her lower back and left knee.  Tr. at 352-53.  Examination of Plaintiff's lumbar

spine revealed identical findings as her prior visit in September 2018, including pain, spasms, and tenderness to palpation, slight pain with range of motion and slight leg weakness at times, and positive SLR and Lasegue's tests.  Id. at 353.  Plaintiff again declined a myofascial lumbar trigger point injection and was told to continue conservative care and home exercises.  Id. at 352.  Dr. Ruth also recommended a cane to assist Plaintiff in walking and to improve her stability.  Id.

At the October 23, 2019 administrative hearing, Plaintiff testified with the assistance of a Spanish language interpreter, explaining that she spoke "a little" English but is more comfortable speaking Spanish.  Tr. at 36.  She testified that she cannot work due to a pinched sciatic nerve on the right side and osteoarthritis with radiculopathy that does not allow her to exert herself, id. at 39, and that she uses a cane with her right dominant hand, prescribed in April 2019, because she has trouble walking.  Id. at 40, 43-44, 46.  Her lower back pain has worsened since she moved from Puerto Rico to Pennsylvania and she cannot sit or stand for long periods of time, estimating that she can stand for ten or fifteen minutes at a time.  Id. at 42-43.  Plaintiff attended physical therapy at least two times per week during 2018, but will not be sent for additional physical therapy because she was told she would not improve.  Id. at 40.  In a typical day she lies down "all day long," id. at 40, and can use the stairs in her apartment "bit by bit, holding onto the handrail."  Id. at 43.  She traveled by bus to her physical therapy appointments and to the hearing.  Id. at 40-41.  During the hearing, Plaintiff sat with her hand on her back to find a comfortable position, and she stood for some period of time.  Id. at 42, 44.

Plaintiff's testimony is broadly consistent with a Function Report and Supplemental Function Questionnaire that she completed. Tr. at 206-13, 214-15. For example, Plaintiff indicated in the Function Report that she cannot stand or sit "for hours," lift anything heavy, and bend or try to reach things. Id. at 206. A typical day consists of eating, taking her medications, checking the mailbox, walking around the apartment "from time to time," and lying in bed. Id. at 207. She does not perform chores because she cannot stand or bend much because of back pain, she does not drive because of pain in her back and buttocks, her hobbies and interests are affected because she cannot sit for long periods of time, and she does not engage in social activities due to pain. Id. at 209-11. She goes shopping for groceries two times per month, which takes about three hours each time. Id. at 209. In the Supplemental Function Questionnaire, Plaintiff indicated that her pain is constant and gets worse at night and with activities such as walking or sitting too much. Id. at 214.

A VE also testified at the October 23, 2019 hearing. Tr. at 46-56. The ALJ asked the VE to assume an individual of Plaintiff's age and education with no past relevant work, who can lift and/or carry twenty pounds occasionally and ten pounds frequently; sit for six hours, alternating to standing for ten minutes during every hour of sitting; stand for three hours, alternating to sitting for ten minutes after every hour of standing; walk for two hours, alternating to sitting for ten minutes after every hour of walking; push/pull as much as they can lift/carry; occasionally climb ramps, balance, stoop, knee, crouch, and crawl; never climb ladders, ropes, or scaffolds; and occasionally work at unprotected heights and operate a motor vehicle. Id. at 47-48. The VE testified that the hypothetical

14

was for a limited range of light work and that there were jobs such a person could perform, including bench assembler, office helper, and locker room attendant. Id. at 48. When asked if the same individual needed a cane for ambulation, the VE testified that the requirement would eliminate the bench assembler job. Id. at 49. When asked if the limitations to standing and walking were inconsistent with light exertional jobs, and if so to explain how she reconciled the difference, the VE responded, "Experience and observation in the field." Id.   In response to questioning by counsel, the VE testified that the locker room attendant job would be eroded by five percent to account for instances where the job required the person to be walking for more than two hours. Id. at 53.

### C.   Plaintiff's Claims

#### 1.   Severity Determination and RFC Assessment

Plaintiff first argues that the ALJ's severity determination is flawed, causing the ALJ to minimize Plaintiff's pain and resulting in a flawed RFC assessment. Doc. 24 at 5-14. Defendant responds that the ALJ properly evaluated Plaintiff's impairments and that the RFC is supported by substantial evidence. Doc. 25 at 16-23.

Step two is known as the "severity regulation" because it focuses on whether the claimant is suffering from a severe impairment. 20 C.F.R. § 416.920(c). An impairment is not severe if it does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." Id. § 416.922(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical activities "such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." Id. § 416.922(b)(1). An impairment is considered non-severe when it has a minimal effect

on the individual's ability to work, irrespective of age, education or work experience.
Bowen v. Yuckert, 482 U.S. 137, 149-51 (1987).

The RFC is the most a claimant can do despite her limitations.  20 C.F.R.
§ 416.945(a)(1).  In assessing a claimant's RFC, the ALJ must consider limitations and
restrictions imposed by all of an individual's impairments, including those that are not
severe.  Id. § 416.945(a)(2).  However, the ALJ is not required to include every
impairment a clamant alleges.  Rutherford, 399 F.3d at 554.  Rather, the RFC "'must
accurately portray' the claimant's impairments," meaning "those that are medically
established," which "in turn means . . . a claimant's *credibly established limitations*."  Id.
(emphasis in original) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)
and citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002); Plummer v. Apfel, 186
F.3d 422, 431 (3d Cir. 1999)).  "In making [the RFC] determination, the ALJ must
consider all evidence before him."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121
(3d Cir. 2000).

Here, as previously noted, the ALJ identified two severe impairments -- DDD of
the lumbar spine at L5-S1 with displacement on the right SI nerve root, and obesity -- and
found that her diabetes, tendonitis of the left knee, scoliosis, and high cholesterol were
medically determinable but non-severe.  Tr. at 21, 23.

Plaintiff's claims focus primarily on the ALJ's consideration of the extent and
limitations effects of Plaintiff's back impairments.  First, Plaintiff argues that the ALJ
improperly minimized the extent of her back impairments and their worsening
progression by failing to acknowledge various objective findings related to that

16

impairment. The ALJ's own narrative summary supports Plaintiff's argument, as the ALJ cited to multiple diagnostic tests evidencing back impairments in addition to the ones he identified as severe (DDD of the lumbar spine at L5-S1 and the displacement on the nerve root on S1) and non-severe (scoliosis). Tr. at 24. For example, a CT scan performed in 2016 revealed DDD at L3-4 to L5-S1, with mild disc bulges resulting in mild spinal canal and bilateral neural foraminal stenosis at the same levels. Id. at 276. Plaintiff's back impairments worsened over time. In June 2018, x-rays order by Dr. Ruth evidenced moderate DDD, degenerative articular facet hypertrophy at L4-L5, degenerative articular facet hypertrophy and bony neural foraminal stenosis at L5-S1, and moderate aortoiliac atherosclerotic calcification. Id. at 326. Later in 2018, a physical therapist noted that Plaintiff experienced pain upon activities of daily living and had decreased muscle performance due to spinal degeneration and deconditioning, with pain in her lumbar spine and right leg, decreased range of motion and strength, and limited mobility due to radiating pain. Id. at 281. Plaintiff repeatedly showed positive SLR and Lasegue tests on numerous visits with Dr. Ruth, evidencing radiculopathy, and the doctor repeatedly offered injections to relieve Plaintiff's symptoms. Id. at 355, 357, 359, 360, 363. In January 2019, consultative examiner Dr. Dzurinko diagnosed Plaintiff with degenerative joint disease and osteoarthritis per report with right sciatica, radiculopathy per report and EMG study with chronic low back pain. Id. at 314. When conservative treatment and physical therapy failed to relieve Plaintiff's symptoms, Dr. Ruth recommended a cane for ambulation and stability. Id. at 352. The totality of this

objective evidence leads to the conclusion that Plaintiff has more determinable (and possibly severe) back impairments than found by the ALJ.

Second, Plaintiff argues that the elaborate sit-stand option contained in the ALJ's RFC assessment has no basis in the record.  As previously noted, the ALJ concluded that Plaintiff retained the RFC to perform a range of light work, limited in relevant part to sitting for six hours, alternate to standing for ten minutes during every hour of sitting; standing for three hours, alternate to sitting for ten minutes after every hour of standing; and walking for two hours, alternate to sitting for ten minutes after every hour of walking.  Id. at 22.  It is unclear how the ALJ reached this formulation, as state agency reviewing physician Dr. Hollick opined that Plaintiff could sit and stand and/or walk for a total of six hours each in an eight-hour workday, id. at 63-64, and consultative examiner Dr. Dzurinko opined that Plaintiff could sit for five hours continuously and for eight hours total in an eight-hour workday; could stand for thirty -to- sixty minutes at one time and for three hours total; and could walk for thirty minutes at one time and for two hours total.  Id. at 317.  Importantly, the ALJ identified no medical justification for his finding that Plaintiff's pain could be alleviated by ten-minute rest periods.  Similarly, given the diagnostic evidence and examination findings regarding Plaintiff's chronic back impairments, including chronic pain and radiculopathy, it is unclear how the ALJ concluded in his RFC assessment that Plaintiff could kneel, crawl, drive a car, and work at unprotected heights and near dangerous machinery.  Id. at 22-23.

Third, Plaintiff argues that the ALJ failed to properly consider the exacerbating effect of Plaintiff's obesity in evaluating the limitations caused by her back impairment.

The ALJ found Plaintiff's obesity to be severe (tr. at 21) and conceded that "it worsens her symptoms in combination with her other impairments" (id. at 25), and then stated that he "fully considered this impairment in assessing [Plaintiff's RFC]," with no further discussion.  Such boilerplate language becomes problematic where, as here, the ALJ concedes that Plaintiff's obesity is severe and that it exacerbates her other impairment, but fails to properly consider the extent and worsening of that other impairment.

Finally, Plaintiff argues that the ALJ improperly rejected evidence that Plaintiff needs a cane for ambulation and stability.  Because the ALJ discussed Plaintiff's use of a cane specifically in reference to the RFC and VE testimony, I will address this issue in the next section.

For the above reasons, remand is warranted for proper consideration of the objective medical evidence regarding the extent and limiting effects of Plaintiff's back impairments, which in turn impacts the sit-stand option contained in the RFC assessment. Upon remand, the ALJ shall provide a more thorough discussion of the impact of Plaintiff's obesity in combination with her back impairments including, for the reasons discussed in the next section, its impact on her need to utilize a cane for ambulation and stability.

2.    ALJ's Reliance on VE Testimony

Plaintiff next argues that the ALJ erred in his consideration of the vocational evidence, including failing to account for Plaintiff's need for a cane and conflicts between the VE's testimony and the DOT.  Doc. 24 at 14-18; Doc. 28 at 5-10.  Defendant

responds that the ALJ properly relied on VE testimony given in response to a
hypothetical that was consistent with Plaintiff's RFC.  Doc. 25 at 23-26.

In order for the VE's testimony to constitute substantial evidence, the hypothetical
question posed must consider all of the claimant's impairments which are supported by
the record.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  "Hypotheticals
are considered deficient when important factors are omitted or the claimant's limitations
are not adequately portrayed."  Emery v. Astrue, Civ. No. 07-2482, 2008 WL 5272454, at
*3 (E.D. Pa. Dec. 18, 2008) (citing Podedworny, 745 F.2d at 218).

Here, in the context of Plaintiff's RFC, the ALJ stated the following regarding
Plaintiff's use of a cane:

> The [RFC] herein does not include the need of a cane for
> ambulation because the evidence does not support the same
> throughout the alleged period of disability.  A physician
> recommendation for a cane was not made until April 10, 2019
> [tr. at 352].  Even if use of a cane for ambulation was
> included in the [RFC] . . . [Plaintiff] could still perform work
> at the light exertional level.

Tr. at 26-27.  The ALJ then addressed Plaintiff's use of a cane in the context of the VE's
testimony:

> The [VE] also testified that if a person needed a cane for
> ambulation, she would still be able to perform the office
> helper and locker room attendant jobs.  The representative
> took issue with such testimony both at the hearing and in the
> post-hearing submission, particularly regarding a person's
> ability to perform the job of locker room attendant with the
> limitations in the [RFC].  Nevertheless, the undersigned finds
> that the [VE's] testimony that [Plaintiff] is able to perform a
> range of light exertional jobs to be persuasive given the
> limitations in the RFC. . . .  This is particularly true for jobs
> such as office helper, which involve limited standing/walking

20

> requirements.  As noted above, the RFC analysis did not
> include the need of a cane for ambulation because the
> evidence does not support the same throughout the alleged
> period of disability.  However, even if such a limitation were
> included, the undersigned concludes that [Plaintiff] could
> perform the office helper and locker room attendant jobs.

Id. at 28 (record citation omitted).

I agree that the ALJ's failure to include the use of a cane in Plaintiff's RFC assessment is not supported by substantial evidence.  Although a physician did not recommend that Plaintiff ambulate with a cane until April 2019, both the objective and subjective record shows that Plaintiff had longstanding back pain which affected her mobility.  As such, the ALJ's failure to include the need for a cane in the RFC assessment is consistent with the ALJ's flawed consideration of Plaintiff's back impairments as discussed in the previous section.  There is no suggestion that Plaintiff's use of a cane is expected to be temporary; to the contrary, as discussed in the previous section, the record demonstrates that Plaintiff's back problems have worsened over time, necessitating the addition of a cane after conservative treatment and physical therapy failed to provide relief, and Plaintiff utilized her cane at the hearing.  Tr. at 40.  Also, the recommendation for a cane was made by Plaintiff's treating orthopedist, Dr. Ruth, who prescribed the cane for both walking and stability.  Id. at 352.  However, the ALJ acknowledged only its use in ambulation, and thus did not consider that when Plaintiff uses the cane for stability while standing, it effectively deprives her of the benefit of one arm for purposes of the lifting requirements of the jobs identified by the VE and the ALJ.

Of course, an ALJ may discount a claimant's use of a cane when there is insufficient supporting evidence of a cane in the record:

> While [the claimant] did testify that she required the use of a cane, the ALJ was not required to accommodate such use in the [RFC] determination. . . .  Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]"  SSR 96-9p [1996 WL 374185, at *7]. Absent such documentation, an ALJ need not accommodate the use of a cane in a[n RFC] assessment, even if the claimant was prescribed a cane by a doctor.

Williams v. Colvin, Civ. No. 13-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014); see also Schade v. Colvin, Civ. No. 13-1071, 2014 WL 320133, at *8-9 (W.D. Pa. Jan. 29, 2014) (ALJ did not err in not including a cane requirement in RFC assessment because there was no evidence other than plaintiff's own testimony).[19]  Here, the ALJ concedes that Plaintiff's treating orthopedist recommended Plaintiff use a cane, and that recommendation was for both assistance in mobility and for stability, with no indication that the recommendation was situational or temporary.  Under the circumstances, therefore, the ALJ should have included the need for a cane in Plaintiff's RFC

---

[19]Although SSR 96-9p ("Policy Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work . . . Implications of a [RFC] for Less Than a Full Range of Sedentary Work") concerns the impact of an RFC assessment for less than a full range of sedentary work, see 1996 WL 374185, at *1, the language quoted above has been cited in cases in which a claimant with an RFC for a limited range of light work requires the use of a cane.   See, e.g., Soto v. Comm'r of Soc. Sec., Civ. No. 17-89, 2018 WL 355138, at *5 (D.N.J. Jan. 10, 2018) (claimant limited to light work); Williams, 2014 WL 4918469, at *6 (claimant limited to light work); Schade, 2014 WL 320133, at *8 (claimant limited to range of light work).

assessment, or contacted the doctor for clarification as to why and for how long it would be required.

My conclusion in this regard does not end matters because the ALJ found that even if Plaintiff was required to utilize a cane "for ambulation," tr. at 26, 28, she could still perform two of the three jobs the VE identified -- office helper and locker room attendant.  Id. at 28.  Plaintiff argues that the ALJ's finding in this regard is flawed because the ALJ failed to acknowledge that Plaintiff needs the cane for both walking *and for stability*, as stated by Dr. Ruth, and that requiring the cane for both would necessarily limit Plaintiff's ability to lift and carry while walking and her ability to stand at a workstation while working with one hand.  Doc. 24 at 14-18; Doc. 28 at 1-4.  I agree.  The ALJ twice stated that Plaintiff requires a cane "for ambulation" only, tr. at 26, 28, and he explicitly limited his hypothetical to use of a cane only for ambulation when the VE asked for clarification.  Id. at 48-49.  As a result, the ALJ failed to consider whether Plaintiff needed the cane for stability as well as ambulation, and never asked the VE whether the requirement of a cane for both stability and ambulation would erode the occupational base beyond the erosion identified by the VE with respect to ambulation only.  Such failures cannot be deemed harmless where the additional limitation may preclude the work identified by the VE or result in a finding that Plaintiff was limited to sedentary work, which could in turn result in a finding that Plaintiff is disabled by operation of the Medical-Vocational Guidelines ("Grids").[20]

---

[20]Because I find that remand is warranted for the ALJ's failure to include a cane in the RFC assessment and to acknowledge its use to assist Plaintiff with both ambulation

For these reasons, I recommend that upon remand, the ALJ revisit the issue of Plaintiff's doctor-recommended cane and its impact on Plaintiff's RFC assessment and, if necessary, obtain additional vocational testimony.

                    3.    <u>Constitutionally Defective Decision</u>

Finally, Plaintiff argues that the ALJ's decision is constitutionally defective because the appointment of the Commissioner of Social Security violates the separation of powers, relying on <u>Seila Law LLC v. Consumer Financial Protection Bureau</u>, 140 S.Ct. 2183 (2020).  Doc. 24 at 18-21.  Defendant responds that Plaintiff's constitutional argument does not entitle her to a rehearing of her disability claim.  Doc. 25 at 3-15.  Because I have already determined that the case must be remanded for further consideration, I need not address this issue further at this time.

## IV.   **CONCLUSION**

The decision of the ALJ is not supported by substantial evidence.  The ALJ failed to properly consider the objective medical evidence regarding the extent and limiting effects of Plaintiff's back impairments, which in turn impacts the sit-stand option contained in the RFC assessment and the ALJ's consideration of Plaintiff's back pain in combination with her obesity.  The ALJ also failed to include Plaintiff's use of a cane in formulating his RFC assessment, or to properly consider the vocational impact of using a cane for both ambulating and stability.  Therefore, Plaintiff's present motion for summary

---

and stability, I do not find it necessary to address Plaintiff's additional argument that the VE's testimony regarding the requirements of the office helper and locker room attendant jobs is inconsistent with the <u>DOT</u>.

judgment and request for review (Doc. 24) is granted and Plaintiff's initial motion for summary judgment (Doc. 19) is dismissed as moot.

An appropriate Order follows.